# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

DEBRA BARTH, Individually and as
Conservator for James Barth,
an incapacitated person,

    *Plaintiff*,

v.

HARDINGE, INC.,
PRODUCTION TOOL SUPPLY CO.,

    *Defendants*,

and

HARDINGE, INC.,

    *Third Party Plaintiff*,

v.

PRODUCTION TOOL SUPPLY CO.,

    *Third Party Defendant*.
_____/

CASE NO: 09-13667

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE CHARLES E. BINDER

## **ORDER ON PLAINTIFF'S MOTION TO COMPEL**
## **AFTER IN-CAMERA INSPECTION**
(Doc. 36)

This order is entered under the authority given to this magistrate judge in an order of reference issued by U.S. District Judge Thomas L. Ludington pursuant to 28 U.S.C. § 636(b)(1)(A).

## I.    **Introduction and Procedural Background**

This is a products liability action involving a Hardinge "Talent" Model 10/78 rotary turning machine manufactured by a Taiwanese entity pursuant to a Joint Venture Agreement, and sold by

Defendant Hardinge, Inc. (hereafter "Defendant") to a small machine shop operated by James Barth (hereafter "Plaintiff") and his son in Spruce, Michigan.

On July 5, 2007, Plaintiff was forming a 27-pound piece of metal in the Talent 10/78 machine when the piece was ejected from the machine. As it was ejected, it impacted the machine's clear polycarbonite observation window, severely warping the window and its surrounding frame. According to the complaint, the window and frame struck Plaintiff in the head, causing permanent disabling injuries.

During discovery, counsel for Plaintiff learned of an incident in Wales, the United Kingdom, which took place a few weeks prior to the accident at issue in this case. On April 30, 2007, a metal piece was ejected from a Talent machine, striking and killing the machine operator. In that case, as the metal piece was ejected, it shattered and penetrated the viewing window on the machine. Counsel for Plaintiff represents that both Defendant and the UK equivalent of the Occupational Health and Safety Administration ("OSHA"), known as the Health and Safety Executive ("HSE")[1] investigated the incident, and a number of documents were generated in the process. Counsel for Plaintiff also believes that although Defendant initiated a recall of the windows in all Talent machines sold in the UK, replacing the original windows with new material three times thicker, no similar recall was initiated in the United States. The incident in Wales, coming less than 3 months prior to the incident giving rise to this case, forms the backdrop for the instant motion.

---

[1] Under the Health and Safety at Work etc. Act 1974 (as amended) (HSWA) HSE has been set up in order to "support the Government's strategic aims and current targets for health and safety at work. Its main aim is to secure the health, safety and welfare of people at work and protect others from risks to health and safety from work activity." *See* < http://www.hse.gov.uk/aboutus/howwework/management/dwphse.pdf >.

Originally at issue in this motion (Doc. 36) were Plaintiff's Second Set of Interrogatories and Fourth Request for Production of Documents. Plaintiff filed a supplemental brief on October 15, 2010 (Doc. 46), and Defendant filed a response opposing the motion on the basis of relevance, the attorney-client privilege, and the work product privilege. (Doc 47.) The parties have narrowed the issues to four areas: a Joint Venture Agreement between Defendant and the Taiwanese entity; a series of memos written between employees of Defendant's United Kingdom affiliate; a report and revisions authored by an outside expert during the investigation of the UK incident; and information relating to Talent machines sold in the United States.

Oral argument was held October 25, 2010. At the close of the hearing, the Court ordered a set of documents presented for *in camera* inspection. The documents were promptly submitted, their inspection is now complete, and the matter ready is for decision.

## II.  Joint Venture Agreement

Citing deposition testimony of employees of Defendant that they have gone to Taiwan to inspect machines built there, as well as the scope of allowable discovery under the Federal Rules, Plaintiff seeks the Joint Venture Agreement in order to see if the Agreement authorizes or requires Defendant to inspect the output of the Taiwanese factory. Defendant objects on relevancy grounds, arguing that there is no dispute as to the ownership of the machine and that Defendant acknowledges that the machine is theirs.

After *in camera* review of the Joint Venture Agreement, along with an accompanying Employment Agreement, two Consultant Agreements, and a Lease Agreement, the Court finds no provisions explicitly authorizing or requiring Defendant to inspect or certify the output of the

Taiwanese joint venturer. As I find the Agreement wholly silent on this subject, I conclude that Defendant's arguments are well taken and that the document is not discoverable.

### III.    Intra-Corporate Memos[2]

Plaintiff seeks a series of memos circulated amongst Hardinge UK employees subsequent to the UK incident. These memos purport, among other things, to memorialize meetings involving Hardinge employees and representatives of the HSE. Defendant resists production of these memos, citing attorney-client privilege.

The burden of establishing the existence of the attorney-client privilege rests with the person asserting it. *See In Re: Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983). "The elements of the attorney-client privilege are as follows: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). Generally, the "attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." *In Re: Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996).

In *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981), the communications at issue were conveyed to the organization's attorney by lower-level employees as the result of an investigation or fact-finding mission. The United States Supreme Court

---

[2]These documents include Bates stamped pages HI 1021-22, HI 1176-1206, HI 1215-1238, HI 1242-1243, and HI 1320-1324.

determined that these employees were bound by the attorney-client privilege not to reveal confidential communications between themselves and counsel given within the scope of the employees' duties to enable the organization to obtain legal advice. The Court held that the privilege applies even though these employees were not "decisionmakers" of the organization. It explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice . . . [because] [t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id*. at 390-91 (citation omitted).

However, the *Upjohn* Court also clarified that the protection of the privilege extends only to communications, and not to facts. *Id*. at 394-95. "A fact is one thing and a communication of that fact is an entirely different thing." *Id*. (citation omitted). Thus, while a client may not be compelled to reveal what it said or wrote to its attorney, it may not refuse to disclose any relevant fact within its knowledge merely because it incorporated a statement of that fact into its communication to the attorney. *Id*. at 396.

Applying these principles to the circumstances of this case, I conclude that, with one exception, the memoranda submitted for *in camera* inspection are not privileged. With one exception, none of the documents seek attorney advice. All of the documents except one recount facts, and many of these documents memorialize meetings in which outside persons participated, particularly members of HSE. Thus, the privilege either does not attach, or if attached, has been waived. However, I conclude that one document (H 1242-1243) clearly seeks legal advice, and expresses concern as to how to proceed in the absence of that advice. That document is, I conclude, privileged.

## IV.   "Compliance Assessment Report"[3]

Three versions of this report have been presented for *in camera* inspection. The original is dated August 16, 2007, and the two revisions are both dated August 24, 2007. The report relates entirely to the UK incident and was authored by Robin J. Carver, a "Chartered Safety Practitioner" in the United Kingdom. Pointing to the first paragraph of the report, Defendant argues that the report and its revisions are attorney work product. Plaintiff resists this characterization. At oral argument, neither party could confirm whether this report has been shared with HSE.

According to Defendant, this report presents a classic example of attorney work product. As mentioned, Defendant's argument centers on the opening paragraph of the report, which states as follows:

> This report was commissioned by the solicitors, Mundays LLP[]. Mundays LLP is instructed on behalf of Hardinge Machine Tools Ltd.[] to advise them following an incident which involved machinery supplied and manufactured by them.

The work product doctrine "is designed to allow an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947)) (alteration in original). It protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the party shows "substantial need" and "undue hardship." Fed. R. Civ. P. 26(b)(3)(A). "However, absent waiver, a party may not obtain the 'opinion' work product of his adversary; i.e., 'any material

---

[3]Bates stamped pages H 1067-1161.

reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.'" *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986)).

The burden to show that a matter is not discoverable rests upon the party asserting the privilege. *Id.* To demonstrate privilege or work-product protection, the Federal Rules of Civil Procedure require the party asserting privilege or protection to "describe the nature of the documents, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). I conclude at the threshold that Defendant's privilege log and production for *in camera* inspection meet this obligation.

Under these standards, I conclude that this report and its revisions are privileged. While facts are recounted, the report is replete with specific conclusions and recommendations. As the first paragraph makes clear, the report was commissioned by attorneys after an accident and has as its purpose to allow the attorneys to "assemble" and "sift" information in preparation for potential litigation. I further conclude that even if the report was shared with HSE, the result does not change. Section 28 of the HSE's enabling statute (the Health and Safety at Work Act 1974 (c. 37)[4]) severely restricts the disclosure of "relevant information . . . without the consent of the person by whom it was furnished." Section 28(2). Finally, Plaintiff has made no showing of "substantial need" or "undue hardship." For these reasons, I conclude this report and its revisions are not discoverable in this case.

---

[4]*See* http://www.statutelaw.gov.uk/content.aspx?LegType=All+Legislation&title=health+and+safety+at+work+etc+act+&Year=1974&searchEnacted=0&extentMatchOnly=0&confersPower=0&blanketAmendment=0&sortAlpha=0&TYPE=QS&PageNumber=1&NavFrom=0&parentActiveTextDocId=1316700&ActiveTextDocId=1316739&VersionNumber=24&filesize=54242

**V.     Interrogatory 6, Second Set**

The last matter at issue involves this interrogatory, which asks for the identity of all purchasers of replacement observation window units for the Talent 10/78 machine for a 2-year period. Defendant responds that it cannot reply, as it keeps no separate records for the Talent 10/78, since all Talent machines have identical observation window openings. Defendant also points out that windows were likely sold to suppliers, who then sold them out of stock to end users. Plaintiff responds with Exhibit 6 to its Supplemental Brief, which purports to be a list of Talent machines sold in Europe. After review of the documents and consideration of oral argument, I conclude that the information sought by this Interrogatory is relevant and discoverable, and will grant the motion in part as shown below.

**VI.    ORDER**

For the reasons set forth above, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

- As to the Joint Venture Agreement, Plaintiff's motion is **DENIED.**

- As to the intra-corporate memos, Plaintiff's motion is **GRANTED** as to Documents HI 1021-22, HI 1176-1206, HI 1215-1238, and HI 1320-1324; and **DENIED** as to Document HI 1242-1243.

- As to the "Compliance Assessment Report," Plaintiff's motion is **DENIED.**

- As to Interrogatory 6 of the Second Set, Plaintiff's motion is **GRANTED IN PART**. Defendant shall produce a listing of all Talent machine observation windows sold in North America from January 1, 2004, through June, 2006.

Defendant shall produce the required materials no later than 21 days from the date of this Order.

The documents submitted for *in camera* inspection shall be returned to Defendant.

Review of this order is governed by 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and E.D. Mich. LR 72.1(d).

                                              s/ *Charles E Binder*
                                              CHARLES E. BINDER
Dated: November 16, 2010                 United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Order was electronically filed this date, electronically served on Joseph Lucas, Anthony Kostello, William Kiriazis, and Michael Swogger, and served on District Judge Ludington in the traditional manner.

Date: November 16, 2010                 By    s/*Jean L. Broucek*
                                                     Case Manager to Magistrate Judge Binder