UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBRA BARTH,
Individually and as Conservator
for James Barth, an Incapacitated
Person,

    *Plaintiff*,

v.

HARDINGE, INC,

    *Defendant & Third-Party Plaintiff,*

v.

PRODUCTION TOOL SUPPLY COMPANY,

    *Third-Party Defendant.*

                                        /

CASE NO. 09-CV-13667

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
(ECF 83)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED**.

## II.    REPORT

### A.    Introduction

As alleged in the complaint, this is a product liability action based on permanent and disabling injuries sustained by James Barth ("Barth") on July 5, 2007. Barth was forming a 27-pound piece of metal in a Hardinge Talent Model 10/78 CNC rotary turning machine (or lathe)

when the piece came loose from the lathe's chuck and was ejected from the lathe, striking the lathe's clear polycarbonite ("PC") vision panel, causing the panel and frame to strike Barth in the head.[1] The complaint alleges that "[t]he design of the chuck hydraulic system, guard door, the vision panel and the vision panel mounting system was defective in that the excessive chuck pressure caused the chuck jaws to deflect, allowing the workpiece to escape and, when the safety window was struck by flying stock, it pulled out of the frame, swung outward and struck the operator." (Am. Compl., ECF 54 ¶ 30.)[2]

The subject lathe had been purchased by Intech Funding Corporation ("Intech") on May 31, 2007, and leased to Barth's employer, Elite Industries, Inc. ("Elite"), on that same date. (ECF 90 at 10-11.) The subject lathe was shipped to Elite on June 12, 2007. Plaintiff Debra Barth filed the instant action against the manufacturer of the lathe, Hardinge, Inc. ("Hardinge"), on September 16, 2009.

On May 6, 2011, Plaintiff filed the motion for partial summary judgment that is before the Court. (ECF 83.) Hardinge responded (ECF 102) and oral argument was held on August 24, 2011. Therefore, the matter is ready for report and recommendation.

**B.     Summary Judgment Standards**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable

---

[1] I note that the precise manner in which Barth was injured is disputed and I express no opinion on that; the recited facts are merely for introductory purposes.

[2] Citations to ECF refer to the document numbers assigned by the court's Electronic Case Filing system. All page citations refer to the page numbers generated by the electronic system rather than the page numbers that appear on the physical documents. Exhibits are referenced by the hyphenated document number assigned by the electronic system.

to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

However, when "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997). *See also Yarbrough v. Garrett*, 579 F. Supp. 2d 856, 867 (E.D. Mich. 2008). "'In other words, in such case the movant 'must satisfy both the initial burden of production on the summary judgment motion – by showing that no genuine dispute exists as to any material fact – and the ultimate burden of persuasion on the claim – by showing that it would be entitled to a directed verdict at trial.'" *Yarbrough*, 579 F. Supp. 2d at 867 (citations omitted). Only after the moving party makes this showing will the non-moving party have an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore, supra.*

### C.     Product Liability in Michigan

The Michigan Product Liability Act provides:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product defect, the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller and that . . . a practical and technically feasible alternative production practice was available that would have prevented the harm . . . .

Mich. Comp. Laws § 600.2946(2).

As to damages, Michigan law provides that "the total amount of damages for noneconomic loss shall not exceed $280,000.00, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function, in which case the total amount of damages for noneconomic loss shall not exceed $500,000.00." Mich. Comp. Laws § 600.2946a(1). This limitation on damages "does not apply to a defendant if the trier of fact determines by a preponderance of the evidence that the death or loss was the result of the defendant's gross negligence, or if the court finds that the matters stated in section 2949a are true." Mich. Comp. Laws § 600.2946a(3).

Section 600.2949a, commonly referred to as the "willful disregard of defect" statute, is the statute on which Plaintiff's motion is based. It provides that,

> if the court determines that at the time of manufacture or distribution the defendant had actual knowledge that the product was defective and that there was a substantial likelihood that the defect would cause the injury that is the basis of the action, and the defendant wilfully disregarded that knowledge in the manufacture of the product, then sections 2946(4) [presumption of due care arising from compliance with governmental standards], 2946a [products liability damages cap], 2947(1) to (4) [defenses of alteration, misuse, voluntary assumption of the risk and sophisticated user], and 2948(2) [open and obvious defense] do not apply.

Mich. Comp. Laws § 600.2949a.

### D.    Plaintiff's Motion for Partial Summary Judgment

Relying on section 2949a's exclusion of many defenses and its damages cap, Plaintiff asserts that Defendant Hardinge willfully disregarded a known defect in distributing the machine in question and therefore seeks partial summary judgment "barring the introduction of any evidence in support of Defendant's Affirmative Defenses 3 (comparative negligence), 6 (all defenses contained in the Product Liability statute, MCL 600.2945-49), 7 (product misuse), 9 (failure to follow directions), 11 (defenses under Public Acts 161, 222 and 249 of 1995 - the 1995

5

and 1996 amendments to the products liability statute), 12 (allocation of fault), 13 (Plaintiff's fault exceeds 50%) and 14 (assumption of risk)." (ECF 83 at 11 (citing D.'s Ans. & Aff. Def., ECF 56).) Plaintiff also seeks a ruling from the Court holding that "the 'cap' on noneconomic damages, MCL 600.2946a, is inapplicable to this action." (ECF 83 at 11.)

In support of the motion, counsel for Plaintiff cites case law where the finding of willful disregard of a known defect was made by a court as a matter of law. (ECF 83 at 25-26 (citing *Belleville v. Rockford Mfg. Group, Inc.*, 172 F. Supp. 2d 913 (E.D. Mich. 2001); *Walker v. Eagle Press & Equip. Co., Ltd.*, No. 03-72850, 2007 WL 907268, at *3 (E.D. Mich. March 23, 2007).) Plaintiff contends that, pursuant to these cases, all that is required for a court to make this legal finding is evidence showing that the defendant had "an awareness of the hazard and of the availability of a safety device." (ECF 83 at 25.)

Plaintiff's counsel points to several pieces of evidence in support of his contention that Defendant Hardinge was aware, prior to Barth's accident, of the hazard and of the availability of a safety device. That evidence includes: knowledge of an April 2007 incident in Wales, which resulted in the death of an operator of a Talent 10/78 machine[3]; deposition testimony from Hardinge Technical Director Roger Dargue stating that the 4.5 mm Lexan polycarbonate ("PC") vision panel used in the 10/78 machines did not meet safety standards (was "under spec") (Dargue Dep., ECF 83-15 at 32); testimony concerning a May 2007 decision by Hardinge UK to suspend all shipments of Talent machines due to safety concerns (Dargue Dep., ECF 83-15); a June 4, 2007, email from Hardinge engineer Paul Ling stating: "Proposal: All the Talent 10/78 machines

---

[3] On April 30, 2007, which was slightly more than two months before the accident giving rise to this case, in Wales, the United Kingdom (UK), a 56-pound workpiece came out of the chuck of a Hardinge Talent 10/78 machine, shattering the vision panel, and striking and killing the operator, Anthony McGillivray. (ECF 83 at 8; ECF 102 at 11.) In the instant case, the subject lathe was shipped to Elite Industries on June 12, 2007, and Barth was injured while using it on July 5, 2007.

6

shipments are modified to 10 mm PC + 5 mm tempered glass + 6 mm air gap since the May shipment" (ECF 83-21 at 3); deposition testimony that "initially" Hardinge "decided to increase the thickness of the vision panel" "to 10 millimetres," but that "[s]ubsequently, it went to 12 millimetres" (Dargue Dep., ECF 83-15 at 16); and a technical drawing dated June 26, 2007, showing modification of the thickness of the Lexan PC vision panel, increasing it from 4.5 mm to 12mm (ECF 83-25 at 2).

Counsel for Plaintiff asserts that "[t]his evidence presents a compelling case that Hardinge had 'actual knowledge,' and summary judgment is required on 'willful disregard,'" (ECF 83 at 29) because Hardinge knew, before the Barth accident, that a workpiece could be ejected through the viewing panel and therefore Hardinge suspended all shipments of the machines in the UK and had plans drawn up to increase the panel thickness to 12 mm.

### E. Defendant's Response

Defendant Hardinge asserts that the motion must be denied for several reasons. First, Hardinge contends that application of section 2949a requires proof that it willfully disregarded a defect and a substantial likelihood of injury, and asserts that "the only evidence of 'defect' set forth by Plaintiffs consists of the fact that the machine was changed subsequent to the incident . . . [but] the law specifically precludes the use of a subsequent remedial measure as evidence to prove a defect." (ECF 102 at 6.) Hardinge also asserts that Plaintiff has failed to meet its burden to establish that there was a "substantial likelihood" that the alleged defect would cause the injury at issue in this case, and that Hardinge willfully disregarded that likelihood. (*Id.*)

### F. Analysis & Conclusions

In one of the two cases relied upon by Plaintiff (ECF 83 at 25-27), *Belleville v. Rockford Mfg. Group*, the court set forth the elements required for the application of section 2949a:

> Plaintiff must establish for the Court that at the time of manufacture or sale by Defendant: (1) the product was defective; (2) that there was substantial likelihood that the defect would cause the injury that is the basis of the action; (3) that [Defendant] had actual knowledge of said product defect and a substantial likelihood of the type of injury that is the basis of the action; and (4) that [Defendant] willfully disregarded that knowledge in the manufacturing and distribution of its product.

172 F. Supp. 2d at 917. In that case, the plaintiff brought a pretrial motion to amend its complaint to add a claim that the defendant violated section 2949a. The court granted the motion to amend, finding that

> [t]he facts in this case potentially support the above elements of the "wilful disregard of defect" statute listed above. Plaintiff points heavily to the fact that [the plaintiff's decedent] was setting up the wire draw machine in a fashion that, while not specifically condoned by the manufacturer, was widely used in the industry and which was how he was taught to operate the machine by his coworkers. Moreover, Plaintiff points out that Defendant was aware of an existing safety device, which was installed on all European delivery models and would have saved Plaintiff's life.

172 F. Supp. 2d at 917. I note that the court in *Belleville* found that the evidence *potentially* supported the elements of section 2949a. The court did not make a pretrial finding that section 2949a applied and preclude any evidence being brought forward at trial on the defenses of alteration, misuse, open and obvious risk, voluntary assumption of the risk, and sophisticated user; nor did the court make a pretrial ruling that the cap on noneconomic damages applied, as Plaintiff seeks here.

In the other case, *Walker v. Eagle Press & Equip. Co.*, the plaintiff brought a motion for entry of judgment following a multi-million dollar jury verdict, seeking the application of section 2949a, which would remove the damages cap set forth in section 2946a. *Walker,* 2007 WL 907268, at *1. Relying on the evidence adduced at the month-long trial, the court found that,

8

> as a matter of law, Defendant had actual knowledge that the crown press as disassembled was defective, that there was a substantial likelihood of injury and Defendant wilfully disregarded that knowledge. The jury award for noneconomic damages shall not be reduced pursuant to the statutory cap on noneconomic damages. . . .

*Walker,* 2007 WL 907268, at *1.

The question presented by this motion, then, is first whether Plaintiff has submitted evidentiary materials to establish all of the elements of the claim, *Stat-Tech Liquid. Trust*, 981 F. Supp. at 1335, and, if so, whether Defendant has presented significant probative evidence to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore, supra.*

**1.     Element One: The Product was Defective**

Michigan law provides that a manufacturer is not liable for a design defect unless a plaintiff establishes that the product in question was "not reasonably safe . . . and that . . . a practical and technically feasible alternative" was available. Mich. Comp. Laws § 600.2946(2). I note initially that Plaintiff has not attached affidavits from expert witnesses, nor any excerpts from deposition testimony from expert witnesses, nor any other sworn statements from any expert to establish that the subject lathe was "not reasonably safe . . . and that . . . a practical and technically feasible alternative" was available. Mich. Comp. Laws § 600.2946(2).

Hardinge asserts that "the only evidence of 'defect' set forth by Plaintiffs consists of the fact that the machine was changed subsequent to the incident . . . [but] the law specifically precludes the use of a subsequent remedial measure as evidence to prove a defect." (ECF 102 at 6.) In support, Hardinge alleges, both in its brief in response to the motion and at oral argument, that after the Wales incident, Hardinge was involved in an official investigation into the cause of that accident. (*Id*. at 12.) As a part of that investigation, according to Hardinge, "HSE[4] did not find

---

[4]HSE, which stands for Health and Safety Executive, is the United Kingdom equivalent of OSHA.

9

that the Talent 10/78 did not meet the European specification with the original vision panel using the 4.5 mm thick polycarbonate" and "no citations were ever issued, nor were charges ever brought, by the HSE against Hardinge as a result of the Wales incident." (*Id.*)

Hardinge states that, although it "believed that the machine had been designed in accordance with what was required by the European standard, and further, had been advised by PMC amtri veritas[5] that the machine did meet the standard, the polycarbonate used in the vision panel was increased from 4.5 mm to 12 mm." (*Id.*) Hardinge contends, however, that this change to 12 mm was made "[a]fter the Wales and Barth incidents[.]" (*Id.*) More specifically, Hardinge contends that the design change to 12 mm was made 5 days after Barth was injured, and that it relied on an engineering change notice dated July 10, 2007. (ECF 83 at 21; 83-25 at 5.) Thus, Defendant contends that this change was a subsequent remedial measure that cannot be considered by the Court.

Plaintiff, on the other hand, contends that the design change was made before Barth's accident, can thus not be considered a "subsequent remedial measure," and therefore is admissible evidence. Plaintiff relies on the documentation referred to in section D above, including the e-mail from Paul Ling sent on June 4, 2007, approximately one month before Barth's accident, indicating that "[a]ll the Talent 10/78 machines shipments are modified to 10 mm PC + 5 mm tempered glass + 6 mm air gap since the May shipment." (ECF 83-21 at 3.) Plaintiff also relies on the drawing dated June 26, 2007, approximately one week before Barth's accident, showing a modification to the thickness of the Lexan PC vision panel, increasing it from 4.5 mm to 12 mm. (ECF 83-25 at 2.)

---

[5]PMC amtri veritas is an "independent testing house" that determines and certifies whether European safety standards have been met. (ECF 102 at 20.)

The Court cannot rely on inadmissible evidence when ruling on a summary judgment motion; therefore, if the proffered evidence is inadmissible because it was a subsequent remedial measure, it cannot be considered as support for Plaintiff's motion. *See Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004) (court cannot rely on inadmissible hearsay when ruling on summary judgment); *accord, March v. Levine*, 249 F.3d 462 (6th Cir. 2001).

Federal Rule of Evidence 407 governs the admission of subsequent remedial measures:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407. Courts have explained that

> [t]he rationale behind Fed. R. Evid. 407 is two-fold. First, evidence of subsequent remedial measures to show negligence is excluded because "[t]he conduct is not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence." Fed. R. Evid. 407, Notes of Advisory Committee. The second, "more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Id*.

*Andler v. Clear Channel Broadcasting, Inc.*, No. 2:06-CV-265, 2008 WL 2388121, at *2 (S.D. Ohio June 6, 2008). Michigan's corresponding rule of evidence,[6] as well as a section of the product

---

[6]Michigan Rule of Evidence 407 provides:

> When, after an event, measures are taken which, if taken previously would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Mich. R. Evid. 407.

liability statute,[7] are interpreted in the same manner as Rule 407 and need not be addressed separately. *See Christ v. Sears, Roebuck & Co.*, No. 97-1768, 149 F.3d 1182, 1998 WL 344049, at *2 (6th Cir. May 27, 1998); *In re Airport Disaster at Metro. Airport*, Nos. 84-1660, 84-1661, 84-1662, 1985 WL 14069, at *7 n.5 (6th Cir. Dec. 3, 1985).

"By its express wording, Rule 407 does not bar evidence of measures taken after the design or manufacture of a product, but before the injury allegedly caused by the event." *Wendorf v. JLG Industries, Inc.*, 683 F. Supp. 2d 537, 545 (E.D. Mich. 2010) (citing *In re Air Crash Disaster*, 86 F.3d 498, 531 (6th Cir. 1996)). Michigan interprets its evidentiary rule in the same manner. *Downie v. Kent Products Inc.*, 362 N.W.2d 605, 612 (Mich. 1984) (M.R.E. 407 "was written to apply only to the situation where such measures are taken after the accident or injury in question").

As to the type of measures the rule addresses, "[r]egardless of whether a study is forward-looking or retrospective, analyses by themselves are not 'remedial *measures*' for purposes of Rule 407." *In re Second Chance Body Armor, Inc.*, 421 B.R. 823, 837 (W.D. Mich. 2010) (emphasis in original). "Put differently, actions (measures) not words (or brain-storming) govern." *Id*. *See also Rollins v. Board of Governors for Higher Educ.*, 761 F. Supp. 939, 940 (D.R.I. 1991) (drafts and proposals made prior to the incident are not governed by Rule 407 and will be admitted).

In this case, we have Plaintiff's proffer of a technical drawing showing the increase in thickness prior to Barth's accident, and Defendant's assertion that the change to the thickness of

---

[7]The law states:

> With regard to the production of a product that is the subject of a product liability action, evidence of a philosophy, theory, knowledge, technique, or procedure that is learned, placed in use, or discontinued after the event resulting in the death of the person or injury to the person or property, which if learned, placed in use, or discontinued before the event would have made the event less likely to occur, is admissible only for the purpose of proving the feasibility of precautions, if controverted, or for impeachment.

Mich. Comp. Laws § 600.2946(3).

the vision panel was not implemented until after Barth's accident. Applying the principles cited above, it appears that the June 26, 2007, drawing proffered by Plaintiff shows that prior to Barth's accident, even though the new 12 mm vision panels had not yet been fabricated or shipped, Defendant had gone beyond the point of mere "brain-storming," *Body Armor*, *supra*, and was at the point where the design change was on the drawing board, or in draft form, *Rollins, supra,* in which case the evidence would be admissible.

Even if this evidence is considered in support of the element of defect, however, I suggest that it is not of such an irrefutable nature to make this issue "so one-sided that one party must prevail as a matter of law." *Booker,* 879 F.2d at 1310. Michigan law does not define a defective product as "any product not absolutely safe," but rather as a product that is "not reasonably safe." Mich. Comp. Laws § 600.2946(2). Defendant has met its burden of producing significant probative evidence to counter Plaintiff's in the form of an affidavit from an expert witness (Dennis Brickman, a mechanical engineer) wherein Mr. Brickman opines that the Talent 10/78 involved in the Barth accident "was reasonably safe at the time it left the control of Hardinge." (Brickman Aff., 102-18 ¶ 17.)

Accordingly, viewing the evidence in the light most favorable to the nonmoving party, I suggest that Plaintiff's motion for partial summary judgment be denied because there is a genuine issue of material fact on the element of defect.

    **2.**    **Element Two:** Substantial Likelihood that the Defect Would Cause the Injury that is the Basis of this Action

Even if this Court were to assume that a design defect has been established as a matter of law due to the 4.5 mm vision panel, application of section 2949a also requires proof that there was a substantial likelihood that the defect would cause the injury that is the basis of this action.

13

*Belleville,* 172 F. Supp. 2d at 917. Defendant asserts that Plaintiff has failed to cite evidence in the record sufficient to meet this burden. (ECF 102 at 6.)

I suggest that Defendant Hardinge is correct. The precise nature of the cause of Barth's accident is in dispute. As Defendant points out, Plaintiff has presented no evidence to suggest that Barth's accident would not have occurred had the machine contained a thicker vision panel. (ECF 102 at 29.) Defendant contends that, in the Barth accident, the vision panel did not shatter. (*Id.* at 30.) Instead, Defendant alleges that, "[u]nlike the Wales incident, the incident involving Mr. Barth occurred when the workpiece struck the seam between the vision panel and a metal guard door, . . . which separated the vision panel from its channel and allowed the part to escape." (*Id.* at 29-30.)

In his motion papers, Plaintiff has pointed to no evidence suggesting that a thicker vision panel would have prevented Mr. Barth's injuries. As previously stated, no expert testimony or affidavits were proffered. When "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial," however, "summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust*, 981 F. Supp. at 1335. Plaintiff has failed to do so here.

### 3.     Elements Three & Four

Because I suggest that Plaintiff has failed to establish the first two elements required for the application of section 2949a as a matter of law, I find that discussion of elements three (actual knowledge of defect) and four (actual knowledge of likelihood of causation of Plaintiff's injury by such defect) is unnecessary.

14

**4.     Conclusion**

For these reasons, I recommend that Plaintiff's motion for partial summary judgment be denied.

**III.    REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

　s/ *Charles E. Binder*
　　　　CHARLES E. BINDER
Dated: September 19, 2011　　　　United States Magistrate Judge

15

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: September 19, 2011                             By     s/Patricia T. Morris
                                                                         Law Clerk to Magistrate Judge Binder