UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBRA BARTH, individually and as
Conservator for JAMES BARTH, an
incapacitated person,

    Plaintiffs,

v.

                          Case Number 09-13667-BC
                          Honorable Thomas L. Ludington

HARDINGE, INC.,

    Defendant/Third-Party Plaintiff,

v.

PRODUCTION TOOL SUPPLY an assumed
name of PRODUCTION TOOL SUPPLY
COMPANY, LLC.

    Third-Party Defendant.
_____/

**OPINION AND ORDER OVERRULING IN PART AND SUSTAINING IN PART HARDINGE'S OBJECTIONS, ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE BINDER'S REPORT AND RECOMMENDATION, GRANTING IN PART PRODUCTION TOOL SUPPLY'S MOTION FOR SUMMARY JUDGMENT, DISMISSING HARDINGE'S COUNTS I AND II AGAINST PTS WITH PREJUDICE, AND ORDERING SUPPLEMENTAL BRIEFING**

Plaintiff Debra Barth ("Plaintiff"), individually and as conservator for James Barth ("Barth"), an incapacitated person, filed a complaint (ECF No. 1) against Defendant Hardinge, Inc. ("Hardinge") on September 16, 2009, alleging a products liability claim and a loss of consortium claim for personal injuries suffered as a result of a defective Talent 10/78 CNC lathe. The lathe was designed, manufactured, tested, marketed and sold by Hardinge. Hardinge denies any liability for the injuries alleged in Plaintiff's complaint. On October 23, 2009, Hardinge filed a third-party complaint against Production Tool Supply ("PTS") (ECF No. 7), alleging claims for (1) breach of

contract for PTS's failure to procure comprehensive general liability insurance naming Hardinge as an insured thereunder in accordance with the Representative's Agreement; (2) breach of contract for not including the required "Terms and Conditions of Sale" which included an indemnification clause when selling the CNC lathe to James Barth's employer, Elite Industries, Inc.; and (3) express contractual indemnity relative to the claims made in Plaintiff's complaint and the breaches of contract claims in Counts I and II of the third-party complaint.  Hardinge asserts that PTS is obliged to hold Hardinge harmless for all fees and costs in defending the action, as well as for any judgment against Hardinge or settlement entered into by Hardinge in this case. PTS denies that it breached any agreements with Hardinge, and further denies that it is responsible for indemnifying Hardinge for any fees, costs, judgments, or settlement agreements.

On June 1, 2011, PTS filed a motion for summary judgment (ECF No. 90), seeking dismissal of Hardinge's claims. PTS's motion was referred to Magistrate Judge Charles Binder on June 20, 2011. ECF No. 97. Judge Binder issued a report and recommendation on August 18, 2011. ECF No. 113. Judge Binder first concluded that Hardinge's claim for express indemnification contained in Count III is not an independent claim but rather a means for supporting its claims for breach of contract and recommended dismissal of Hardinge's third count.  Judge Binder recommended dismissing Hardinge's first count for breach of contract which alleges that PTS failed to purchase a comprehensive general liability policy of insurance identifying Hardinge as a named insured rather than an additional insured. Judge Binder concluded that, under applicable law, the two terms are coterminous and the language of the contract does not require PTS to indemnify Hardinge for its own negligence. Finally, Judge Binder also recommended dismissing Hardinge's claim in Count II for breach of contract for failing to include an indemnification provision when it sold the lathe

because omitting the provision in its contract with the Plaintiff had not caused Hardinge to suffer any liability or loss under Michigan law. Hardinge filed an objection to the report and recommendation on September 1, 2011. ECF No. 116.

The district court will make a "de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also Thomas v. Arn*, 474 U.S. 140, 149–52 (1985). A party must file specific objections to the report or the party's right to further review will be waived. *Id.* Moreover, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (citations omitted).

For the reasons explained below, Hardinge's objections will be overruled in part and sustained in part, Judge Binder's report and recommendations will be adopted in part and rejected in part, and PTS's motion for summary judgment will be granted.

# I

Hardinge has made three objections to the report and recommendation. Each will be discussed below.

# A

Hardinge's first objection is to Judge Binder's conclusion that Article V, Subparagraph W of the Representative's Agreement does not require PTS to indemnify Hardinge. Subparagraph W reads as follows:

ARTICLE V – THE COMPANY'S OBLIGATIONS.

The Company [PTS] agrees to the following terms and conditions:

\* \* \* \*

> W. To protect Hardinge against, to indemnify Hardinge for, and to hold Hardinge forever harmless from any liability, loss or responsibility which arises by reason of acts or a failure to act of the Company, or by reason of any agreement, statement, representation or warranty made by the Company, including but not limited to any violation by Company of its duty under this agreement, and any claims by Company's Representatives, and to at all times during the term of this agreement, at its own cost and expense, maintain and keep in effect with a responsible insurance carrier Comprehensive General Liability Insurance, with contractual liability endorsement, which endorsement specifically references this Agreement with Hardinge, and with a minimum limit of $1,000,000 combined single limit for bodily injury, death or to property damage. Said insurance policy shall name Hardinge as an insured thereunder and a certificate evidencing such insurance shall be delivered to Hardinge, said certificate to provide for 30 days prior written notice to Hardinge in the event of termination thereof.

Hardinge argues that Judge Binder erred in not considering Count III an independent count but instead construing it as a means to support the claims asserted in Counts I and II. Hardinge contends that Subparagraph W contains clear indemnity language and Count III makes clear that Hardinge is seeking indemnity from PTS independent of its claim for failing to obtain third-party insurance coverage identifying Hardinge as a "named" insured and for failing to include an indemnification provision in Hardinge's favor in the contract for the sale of the lathe to James Barth's employer.

Judge Binder concluded that because Subparagraph W refers to the two obligations, providing indemnity and providing insurance, the two must be "related rather than mutually exclusive." *Aquavella v. Viola*, 914 N.Y.S.2d 498, 503 (App. Div. 2010) (noting the well-settled rule that contracts should be interpreted in a way that reconciles all provisions and a reasonable effort must be made to harmonize all of its terms). Hardinge argues that harmonizing the provisions requires avoiding conflicts, not combining separate obligations that do not conflict and emphasizes that in Subparagraph W, the parties and obligations are different. The indemnity obligation assigns a legal duty to the indemnitor and the insuring obligation requires PTS to secure a third-party insurer

to underwrite the same risk. Hardinge also emphasizes that the indemnity and insurance obligation are separated by the word "and," indicating that the obligations are separate and distinct. Under New York law, "broad indemnification clauses purporting to apply to 'any and all liability' should be construed as meaning what they say," *In re New York City Asbestos Litigation*, 838 N.Y.S.2d 76, 79 (App. Div. 2007). Hardinge requests that the Court reject Judge Binder's recommendation that Count III fails to state an independent cause of action.

Hardinge, in this Court's view, is correct; there is nothing inconsistent about PTS accepting an obligation to obtain $1,000,000 of insurance coverage and agreeing to indemnify Hardinge for any uninsured loss resulting from PTS's negligence. Indeed, that is the reasonable conclusion of the effort to read each of the provisions of Subparagraph W in harmony. While that may be true, it is not the end of the analysis because, as Hardinge emphasizes, the indemnity clause should be interpreted as meaning what it says. While PTS clearly accepted an obligation to indemnify Hardinge in Subparagraph W, it was expressly limited to loss or responsibility arising "by reason of acts or a failure to act of [PTS] . . . ." PTS has a duty to indemnify Hardinge independent of its obligation to provide insurance, but its duty is limited to indemnity for its own conduct and not Hardinge's conduct. While the Court's analysis of Subparagraph W and Hardinge's Count II may differ, the result is nevertheless the same. Moreover, as will be discussed in subsection B, because Hardinge cannot suffer any loss as a result of PTS's failing to include the indemnification provision in the contract for sale of the lathe, it cannot assert a claim for indemnification on this basis. Hardinge's objection on this issue will be overruled, PTS's motion for summary judgment will be granted, and Count III will be dismissed.

**B**

Hardinge next objects to Judge Binder's conclusion that Hardinge was not damaged by PTS's breach of contract by failing to include an indemnity provision when selling the subject lathe. Hardinge contends that this conclusion is erroneous because, even if Hardinge could not be held responsible for any negligent acts of another individual under Michigan law, the indemnity provision would have required the buyer of the lathe to indemnify Hardinge for Hardinge's own acts of negligence. The specific provision at issue provides:

> 11. Indemnification. Buyer agrees to indemnify [Hardinge] and hold [Hardinge] harmless from any and all liability, loss or damages which [Hardinge] may suffer as a result of claims, demands, costs or judgments made against [Hardinge] arising out of any use whatsoever of the machinery and equipment sold pursuant to this Agreement, which liability, loss or damages, claims, demands or judgments are based upon or result from (a) any alteration or modification of the machinery or equipment by Buyer, Buyer's officers, agents or employees; or (b) the failure of Buyer, Buyer's officers, agents or employees to follow manufacturer's instructions, warnings or recommendations which are communicated by [Hardinge] to Buyer in any form before, during or after the time of this sale; or (c) the failure of Buyer, Buyer's officers, agents or employees to comply with federal, state, or local laws or regulations applicable to the use of such machinery or equipment, including but not limited to, the 1970 Occupational Safety and Health Act as amended; or (d) the failure of Buyer, Buyer's officers, agents or employees to properly train and instruct anyone using such machinery or equipment.

ECF No. 7 Ex. A at 12.

As the report and recommendation emphasized, the applicable Michigan tort reform law has abolished joint and several liability in tort actions seeking damages for personal injury, property damage, or wrongful death. Mich. Comp. Laws § 600.2956. Instead, "the liability of each defendant for damages is several and is not joint." *Id.* Hardinge could only be held responsible for its own negligent acts and not the acts of any other negligent person, whether a party to the action or not. Judge Binder correctly concluded that PTS's failure to include an indemnity provision in the buyer's

contract could not, under any conceivable scenario, cause Hardinge to suffer any liability or loss for the buyer's own comparative negligence.

Hardinge also argues that under New York law, indemnification provisions that include language for "any and all liability" create broad indemnity responsibility, including indemnity for the indemnitee's own negligence. Hardinge contends that *In re New York City Asbestos Litigation*, 838 N.Y.S.2d at 79 and *Goll v. Am. Broadcasting Companies, Inc.*, 10 A.D.3d 672 (2d Dep't 2004) supports this proposition. *Goll*, however, reached a very brief conclusion using incomplete sentences and it is not clear that the court conclusively concluded that, under New York law, an indemnity provision such as the one at issue would require the buyer to indemnify Hardinge for Hardinge's own negligence. *In re New York City Asbestos Litigation*, by contrast, concluded that "the language of the contract required [the indemnitor] to indemnify [the indemnitee] if [the] injury was occasioned, even in part, by an act or omission of [the indemnitor]. *In re New York City Asbestos Litigation* thus does not support Hardinge's contention that under New York law that the indemnity provision would have extended the buyer's indemnity obligation to PTS's or Hardinge's negligence. Hardinge's objection will be overruled, and summary judgment will be granted as to Count II.

**C**

Hardinge's final objection is to Judge Binder's conclusion that Count I alleging a breach of contract for failing to have Hardinge identified as a named insured should be dismissed. In Count I, Hardinge alleges that PTS breached its contract because it failed to make Hardinge a "named insured" as opposed to an "additional insured." The report and recommendation noted that, under New York law, the "well-understood meaning" of "additional insured" is "an 'entity enjoying the same protection as the named insured.' " *Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*,

786 N.E.2d 863, 864 (N.Y. 2003) (holding that subcontractor's liability policy that named the general contractor as an "additional insured" provided the general contractor with primary coverage); *Kassis v. Ohio Cas. Ins. Co.*, 913 N.E.2d 933, 934 (N.Y. 2009) (" 'Additional insured' is a recognized term in insurance contracts, and the well-understood meaning of the term is an entity enjoying the same protection as the named insured."). Judge Binder concluded that the "well-understood meaning"of "additional insured" is "an 'entity enjoying the same protection as the named insured.' " *Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*, 786 N.E.2d 863, 864 (N.Y. 2003) (holding that subcontractor's liability policy that named general contractor as an "additional insured" provided general contractor with primary coverage); *Kassis v. Ohio Cas. Ins. Co.*, 913 N.E.2d 933, 934 (N.Y. 2009) (" 'Additional insured' is a recognized term in insurance contracts, and the well-understood meaning of the term is an entity enjoying the same protection as the named insured.").

While Hardinge takes objection to Judge Binder's threshold analysis that the Subparagraph W language requiring an insurance policy is ambiguous, it nevertheless agrees that Hardinge should have received "the same coverage as a 'named insured.' " Hardinge goes on to assert, without further explanation, that "PTS's insurer has taken the position that Hardinge does not have coverage that is the same as that afforded to a named insured." Supplemental briefing will be requested in order to resolve PTS's insurer's position with Judge Binder's analysis of New York law.

**II**

Accordingly, it is **ORDERED** that Hardinge's objections (ECF No. 116) are overruled in part and sustained in part.

It is further **ORDERED** that Judge Binder's report and recommendation (ECF No. 113) is adopted in part and rejected in part.

It is further **ORDERED** that PTS's motion for summary judgment (ECF No. 90) is **GRANTED IN PART**.

It is further **ORDERED** that Counts II and III in Hardinge's third-party complaint against PTS are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Hardinge is **DIRECTED** to provide supplemental briefing addressing the issues outlined in Section I.C. on or before **April 13, 2012.** It is further **ORDERED** that PTS is **DIRECTED** to file a response to Hardinge's supplemental brief on or before **April 27, 2012.**

    s/Thomas L. Ludington  
    THOMAS L. LUDINGTON  
    United States District Judge

Dated: March 30, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2012.

    s/Tracy A. Jacobs  
    TRACY A. JACOBS